No. 21763.

NORTHWEST WATER CORPORATION, A COLORADO CORPORA-
TION *v.* CITY OF WESTMINSTER, A MUNICIPAL CORPORATION.
(432 P.2d 757)

Decided October 23, 1967.    Rehearing denied November 13, 1967.

CREAMER & CREAMER, for plaintiff in error.

LEE, BRYANS, KELLY & STANSFIELD, DONALD D. CAWELTI, for defendant in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

THE parties appear in this court inverse to their alignment in the trial court. We will refer to the plaintiff as Westminster or the City and to the defendant as such or as Northwest.

Westminster, a municipal corporation, filed a declaratory judgment action against Northwest, a public utility, to determine the parties' rights under a contract whereby Northwest agreed to supply water to Westminster.

The City in its amended complaint sought relief predicated upon the following three claims:

(1) That the court declare and determine that Westminster was entitled to and did rightfully terminate the contract, and that all sums put in escrow by the defendant to insure faithful performance on its part should be forfeited to the City.

(2) That the court declare and determine that West-

minster was entitled to and did terminate the contract rightfully due to the failure of defendant to meet the scheduled delivery rates as set forth in the contract, therefore breaching the contract.

(3) That the court declare and determine the contract void for lack of mutuality of obligations and lack of consideration.

Northwest denied that Westminster was legally entitled to terminate the contract and asserted that notice required by the contract in the event of a default had not been given by the City, and counterclaimed for damages for breach of contract by reason of the City's termination of the contract without notice.

The court entered judgment granting part of the relief prayed for under No. (1) above declaring that the contract was rightfully cancelled, but decreed that the escrow money on deposit at the Empire Savings and Loan Association in the sum of $15,000 be returned to Northwest. It denied the second and third claims for relief, and no issue is here made of that action by the court.

Portions of the contract relevant to this litigation are as follows:

"The corporation [defendant] agrees to make available to the City beginning April 1, 1956, and thereafter until Midnight, March 31, 1981, potable water, as defined, and in the quantities and at the prices specified in Schedule A attached hereto and made a part hereof.

"The City agrees to purchase and pay for quantities of potable water specified in Schedule A.

\* \* \*

"Notice to the Corporation of its failure to meet either required scheduled amounts, pressure or health standards shall be delivered to the principal office of the Corporation by the City and receipted by a proper officer of the Corporation or, in the alternative, said notice may be sent by registered mail. If, within thirty (30) days after receipt thereof the contract schedule,

pressure or health standards have not been met, the sum in escrow shall be forfeited to the City as liquidated damages * * * and the contract terminated * * *.

\* \* \*

### SCHEDULE A

"Potable water, as used in the contract of which this schedule is a part, shall mean water suitable for domestic use as approved by the Department of Public Health, State of Colorado, and/or the Tri-County Health Department."

Westminster contended that the water provided by the defendant was supplied in part from a recently completed treatment plant on the Platte River, and that the water produced therefrom and delivered to the City was not approved as required by the contract. Northwest countered that the water produced from the new plant was and always had been potable water and fully satisfactory for all uses contemplated and required under the contract.

Notwithstanding the conflicting views on whether the water was approved by the Health Departments designated in the contract, the main issue in the trial court and here is the necessity for complying with, or the legal consequences of failure to adhere to, the notice provisions of the contract.

On this critical problem the court found that the contract was terminated by Westminster "that it was not necessary to give the notice set forth in the contract and if it were necessary for notice to be given no correction was made within thirty days after termination or at any time subsequent thereto."

Concerning such finding by the trial court, Westminster tacitly agrees with Northwest that the court committed error in decreeing "it was not necessary to give the notice set forth in the contract." The City nevertheless asserts in its summary of argument that as a matter of law this court should hold from the record that *"Any*

*required notice to which the corporation was entitled was given by the City."*

█ Thus with the parties in agreement that the thirty day notice was a mandatory requirement of the contract — and we here hold that it was a condition precedent to termination thereof — the question for our determination is:

*DID WESTMINSTER COMPLY WITH THE NOTICE REQUIREMENT OF THE CONTRACT?*

█ We answer this question in the negative.

The undisputed evidence on this question was that on April 11, 1963 a letter was sent to Northwest by regular mail, signed by Michael S. Lenrow, Manager of Westminster, which, among other things, contained the following:

"The City understands that you are constructing facilities for treatment of Platte River water and addition of water from that source to your system and consequently to our supply from you. We are concerned about the quality of water that can be produced from that source and whether such water will meet the terms of our contract with you; that is, will it meet the water quality standards and be approved by the State Department of Public Health. We will expect to receive written evidence of such State approval prior to the time Platte River water is pumped into your system, if the City's supply is to contain water from that source.

"We would also like to remind you that in a letter dated December 11, 1962, we requested daily delivery of water at the rate of 500,000 gallons per day. That request still stands. However, water usage figures from your billings for the first three months of this year indicate that on fewer than half of the days of those months did you deliver water at the rate we requested. I am sure that you are aware of the provisions of paragraph 3 of the second part of our contract which in part relates to termination of the contract for failure to deliver the required scheduled amounts of water. Please

consider this a formal notice of failure to meet the required schedule amounts and notice to correct this error within thirty (30) days."

The April 11th letter was followed by another dated May 9, 1963, which, in pertinent part, read:

"This is to confirm correction on May 3 and 4 of the deficiency in daily delivery of water and pertains to those two dates only. However, the correction serves to meet the terms of the contract after notice to you on April 11, 1963."

This was the only correspondence between the parties and this is the notice upon which Westminster relies.

In April, as will be noted from the letter, the treatment facilities were in the process of construction and were not completed until several months later. As will also be noted from the letter, the formal thirty day notice referred only to the deficiency in the daily delivery rate of water. Within the time requested Northwest did correct that deficiency, which was acknowledged.

On July 22, 1963 the City Council voted to terminate the contract with Northwest forthwith. It so notified Northwest and refused to accept any further deliveries of water. At the trial, through its Secretary-Treasurer, Northwest offered evidence to the effect that it stood ready and willing at all times to make delivery of water under the contract.

In an effort to support its position that it was legally justified in terminating the contract with Northwest, the City introduced voluminous evidence through both the State Health Department and the Tri-County Health Department officials, that the water delivered through the new Northwest treatment plant did not, on the date of the termination of the contract, have the approval of the health authorities as provided in the contract.

Although accepted by the court as justification for the action of the City Council in voting to terminate

the contract, such evidence was in fact immaterial and irrelevant to the issue presented to the court on the matter of notice, and the thirty days within which Northwest was entitled to obtain — if it could — the necessary approval. We hold that the letter dated April 11, 1963, although stating therein that the City expected to receive written evidence of the approval of the water to be supplied to their system from the Platte River, does not constitute the requisite notice because the letter merely reiterated what was already provided for in the contract. Furthermore, from the point of view of time, it was approximately four months premature and as such could not and did not comply with the thirty day notice requirement of the contract. See *Golden Cycle Mining Co. v. Rapson Coal Mining Co.,* 188 F. 179 (8th Cir.).

It is urged by the City that Northwest is in no position to raise the question of notice because in any event it did not within thirty days after the termination of the contract obtain approval of the water from the health authorities as designated in the contract. This assertion is contrary to the rule announced in *Carleno Coal Sales v. Ramsay Coal Co.,* 129 Colo. 393, 270 P.2d 755, which was based upon a similar contract termination. That case involved a contract between a coal producer and a coal distributor and required that in the event of a breach or default by either party the other party was required to "give to the defaulting party sixty days written notice" of his intention to cancel, "specifying the particular breach * * * and thereupon unless such breach is corrected within said sixty days, the party serving such notice may * * * terminate the contract." Upon a material breach by the distributor, the producer immediately terminated the contract and gave notice thereof without providing for the sixty days within which to correct the default. In the *Carleno* case, *supra,* we held that termination of the contract without giving the sixty day notice within which to cure the

default .constituted a breach thereof ·and that the termination itself did not constitute a .notice to correct; and furthermore, that the producer was under no obligation to construe the termination as the requisite notice.

■ In · addition to holding that the City did not breach its contract and did not have to comply with the notice requirement, · the court also held with reference to Northwest's counterclaim that there was "no ·competent testimony of any damages on which the court could base any recovery." This was error. At least nominal damages for breach of contract should have been assessed. *Carleno v. Ramsay, supra.* Evidence was introduced that the contract had eighteen years to run. There were provisions for payment of ·a minimum sum during the· life of the contract; and whether Northwest will be able to minimize its damages by sale to others still remains to be determined.

The judgment is reversed and the cause remanded to the trial court to reinstate the contract and escrow deposit and to grant a trial on· the issue of damages, if established, for the period commencing July 1963 to the date of the trial. We. do not intend to imply by what we have stated that,the City cannot hereafter, under proper notice, terminate the contract after the time allowed for correcting the asserted noncompliance has run its allotted course.

MR. JUSTICE SUTTON and MR. JUSTICE KELLEY not participating.