The **COLORADO MILLING & ELEVATOR CO.**, a corporation, Appellant,

v.

**CHICAGO, ROCK ISLAND & PACIFIC RAILROAD CO.**, a corporation, Appellee.

No. 9407.

United States Court of Appeals Tenth Circuit.

Sept. 20, 1967.

Rehearing Denied Nov. 8, 1967.

Clayton B. Pierce, Oklahoma City, Okl. (John R. Couch, Oklahoma City, Okl., on brief), for appellant.

John A. Johnson, of Savage, Gibson, Benefield & Shelton, Oklahoma City, Okl., for appellee.

Before MURRAH, Chief Judge, WILBUR K. MILLER, Senior Circuit Judge*, and HICKEY, Circuit Judge.

MURRAH, Chief Judge.

In this indemnification suit Chicago, Rock Island and Pacific Railroad Company seeks to recover from its lessee, Colorado Milling & Elevator Company, an amount paid by the railroad as settlement to an injured employee. Judge Bohanon held that the lease contract, and particularly its indemnity provisions, clearly and unambiguously bound the milling company-appellant to indemnify the railroad-appellee. We affirm.

The stipulated facts show that in 1964, the milling company leased from the railroad certain adjacent property, including trackage and scales. For many years antedating the lease contract, a box-like structure called a "beam box" had stood on the leased premises in such proximity to the track that the grab irons on a passing box car cleared it by only 7.2 inches, a distance insufficient to clear a man standing on the foot rest and holding to the grab rail. Both parties were well aware of this condition.[1] In 1965, a railroad employee was crushed between the box car on which he was riding and the beam box. Rock Island settled with the employee for an amount stipulated as reasonable.

The railroad's claim for indemnification is based upon the provisions of the lease which pertinently provide:

"§ 3. USE. The Lessee *shall not* erect or allow to be erected, any building, structure, or fixture, or place material or obstruction of any kind * * * without giving a clearance of at least eight (8) feet six (6) inches from the center line of said track * * *. All windows, doors, or gates *shall* be of the sliding type, or *shall* open toward the inside of the building or enclosure * * *. The Lessee further agrees that it *shall not* store * * * on or within the premises * * * any article of any kind which is of an extra hazardous or of an explosive * * * nature, without the express written consent of Lessor. The Lessee assumes all responsibility for and agrees to protect, indemnify and save harmless the Lessor, its agents and employees, from and against all loss, damage and expense caused by, or arising out of, or contributed to by the erection or presence of any building, structure or fixture, or placing, or storing or presence of material or obstruction of any kind or making * * * at any place *prohibited by this section.*

"§ 14. LIABILITY. The Lessee agrees to indemnify and hold harmless the Lessor * * * against any and

---

* Of the United States Court of Appeals for the District of Columbia Circuit, sitting by designation.

1. Rock Island had used the track to spot cars since 1920, and Colorado Milling had moved cars along the track in conjunction with its loading operations under a prior lease.

all claims, demands, expenses, liabilities, or causes of action arising out of injury * * * or death * * * or loss of or damage to property * * when such injury, death, loss or damage arises from or is connected with (1) any act or omission on the part of the Lessee, its agents, servants or employees; or (2) *any condition whatsoever in the premises.*" (Emphasis added.)

■ The trial judge was of the opinion that the contract "is susceptible to only one construction", and that "it covers the loss sustained by [Rock Island] to its employee, even assuming that the loss was caused in part by [Rock Island's] own negligence." The milling company argues that in basing its judgment upon Sections 3 and 14 of the lease, the court failed to observe accepted canons of construction under which a contract is to be interpreted in the light of the surrounding circumstances,[2] and by the whole of its parts —not by isolated portions. It is specifically denied that the language of Section 3 is appropriate to impose liability on the milling company, since it imposes liability only for losses caused by hazards "prohibited by this section"; and "this section", it is urged, should be read prospectively to prohibit only those hazards erected or placed on the premises after the execution of the lease—not those such as the beam box which were present when the lease was made. In support of this prospective interpretation, special attention is called to the use of the words "shall" and "shall not" in the first and succeeding sentences to denote the intent of the parties to give prospective effect to the section. It is suggested that as the owner of the leased premises, the railroad had the right and power to control and condition the placement and presence of all structures on the premises, and if, in the circumstances of the case, the railroad had intended to require the milling company to change the known dangerous location of the beam box or suffer the penalty of indemnifying the railroad against loss from any resulting injury, appropriate language to that effect could and should have been included in the lease.

■ This argument is, to be sure, ingeniously plausible since the language in Section 3 is susceptible of prospective construction and application, and indeed, the railroad could have included in the lease contract a specific clause or provision making the milling company responsible for any losses occasioned by the presence of the beam box. But, we think the fallacy of this argument lies in the failure of the milling company to observe the very rule of construction it invokes, i. e., that a contract should be interpreted as a harmonious whole to effectuate the intention of the parties, and every word, phrase or part of a contract should be given a meaning and significance according to its importance in the context of the contract. See Utex Exploration Co. v. Garwood, 10 Cir., 246 F.2d 547, 550; Phillips Petroleum Co. v. McCormick, 10 Cir., 211 F.2d 361, 364; Frankfort Oil Co. v. Snakard, 10 Cir., 279 F.2d 436, 441. Making application of this rule, we are drawn to the all-inclusive language of Section 14, which significantly is entitled "Liability". In clear and unambiguous words it obligates the lessee to indemnify the lessor against any loss "connected with (1) any act or omission on the part of the Lessee, its agents, servants or employees; or (2) any condition whatsoever in the premises." Certainly the beam box is a "condition * * * in the premises" and falls within the ambit of (2).

■ The milling company insists, however, that the two above quoted phrases must be interpreted in light of the rule of ejusdem generis, i. e., that

2. The circumstances of the parties at the time the transaction was entered into may be looked to in construing an unambiguous contract notwithstanding the parol evidence rule. See DeTar Distributing Co., Inc. v. Tri-State Motor Transit Co., 379 F.2d 244, 250. (10 CA, June 8, 1967).

general words following particular or specific terms are restricted in meaning to those things or matters which are of the same kind as those first mentioned. In other words, Colorado Milling contends that "any condition whatsoever in the premises" has no definite connotation or meaning, but following the reference to acts and omissions of the agents, servants or employees of the lessee, it has reference to conditions created by such acts or omissions. We cannot agree. The rule of ejusdem generis is subject to the limitation that where both the general and special provisions may be given reasonable effect, both are to be retained. See Bruce v. Lumbermens Mutual Casualty Co., 4 Cir., 222 F.2d 642; 645. Here, no conflict exists between the two clauses. Rather, they are complementary—one deals with acts of the parties, the other with conditions on the premises. By consecutively numbering and separating the clauses by a semicolon, the parties signified their intent that the two clauses be given equal force and dignity.

■ No contention is made that indemnification clauses of this type are unenforceable because violative of the public policy of the State of Oklahoma. While such clauses are not favorites of the law, they are generally enforceable when made "at arm's length without disparity of bargaining power, and the intent of the parties is manifestly plain and unequivocal." Titan Steel Corp. v. Walton, 10 Cir., 365 F.2d 542, 548. But see Mohawk Drilling Co. v. McCullough Tool Co., 10 Cir., 271 F.2d 627. When Sections 3 and 14 are read together in the context in which they were cast, we agree with the trial court that they clearly and unambiguously impose liability upon the milling company for the asserted loss.

The judgment is affirmed.

WILBUR K. MILLER, Senior Circuit Judge (dissenting):

The railroad employee to whom the majority opinion refers was John M. Musgrove, who was seriously injured on the night of April 13, 1965, when Rock Island pushed or shoved the freight car on which he was riding along its track beside the "beam box" where there was insufficient clearance. Musgrove sued the railroad company in an Oklahoma state court to recover damages for his injuries. He charged the company with several acts of negligence, including the following:

"The defendant Railroad Company was negligent in sending the plaintiff onto the east track in the dark of night when it knew or should have known by the exercise of ordinary care that there was not sufficient clearance between the west track and a metal scales located adjacent to the track, which would not permit this plaintiff to safely perform his duties and orders as a brakeman at said time and place.

"Defendant Railroad Company was further guilty of negligence in not posting any sign or warning that there was not sufficient clearance for a man to ride the side of a box-car through the scales on said track immediately adjacent to the Colorado Mill and Elevator Company.

"The defendant Railroad Company was further guilty of negligence in requiring this plaintiff to spot these particular cars at night when they knew or should have known that the location of the track to certain obstructions would create a dangerous and hazardous condition for this plaintiff."

It seems to me that unquestionably Rock Island was negligent in these respects. The District Court found that

"* * * During the movement of Car No. SA 418 over the west scale track of the leased premises, Musgrove was crushed between the weight scale housing or beam box and the side of Car No. SA 418, and sustained severe injuries."

This meant, of course, that, in the darkness of night, Rock Island had propelled the freight car on which Musgrove was

riding into the unlighted area where there was insufficient clearance. It had known for 40 years that the clearance between its track and the beam box was insufficient, but it took no step to remedy the dangerous situation, or even to warn against it.[1] On November 5, 1965, a judgment was entered by the state court reflecting a compromise of their controversy by Musgrove and Rock Island, by the terms of which the latter paid the former the sum of $50,000.

In this indemnity action the railroad company seeks to recover the sum so paid from Colorado Milling & Elevator Company to whom it had leased a portion of its property on which were situated buildings and structures appropriate for the milling business, including the scales and the beam box. The lease was executed August 12, 1964. The majority affirm the District Court, holding that numbered paragraphs 3 and 14 of the lease constitute an agreement by Colorado Milling to indemnify Rock Island against any loss that "arises from or is connected with * * * any condition whatsoever in the premises." This is a holding that by its lease of August 12, 1964, Colorado Milling indemnified Rock Island against any loss arising from a condition that Rock Island had known of and tolerated for more than 40 years. The mere statement of the proposition leads me to doubt whether the parties to the lease intended the indemnity provisions to apply to structures in existence when the lease was made. But, regardless of that, I think the railroad company is seeking indemnity against its own negligence, which can be done only if there is a contractual provision clearly, expressly and unequivocally providing for such indemnity.

Even if paragraphs 3 and 14 of the lease can properly be said to provide indemnity against loss by the railroad company because of its location of the beam box, I think it correct to say that the beam box was not the primary and proximate cause of the accident.[2] If the acts of active negligence of the railroad company (for which it paid $50,000) had not occurred, there would have been no accident. So, I repeat, Rock Island's negligence caused Musgrove's injuries, and it is seeking indemnity against its own negligent acts.

Contracts for indemnity are construed strictly against the indemnitee unless the indemnitor is a professional issuer of indemnity bonds. A contract of indemnity will not be construed to apply to a loss caused by the indemnitee's own negligence, unless it clearly appears from the contract that the parties so intended. This intention cannot be inferred, but must appear in precise, exact, express, unequivocal language before the indemnitor can be held to answer for the negligence of the indemnitee. These propositions are so generally accepted and so well established in practically all jurisdictions that citation of authority to support them is unnecessary. Suffice it to say that the books are full of cases so holding.

There is not a word in paragraphs 3 and 14 of the lease—nor indeed anywhere in that document—which provides or even suggests or hints that the parties intended idemnification against the railroad company's negligence. That being true, I think the railroad company's action fails, and that the judgment of the District Court should be reversed; so, I respectfully dissent.

1. After the accident the railroad company installed a "No Clearance" sign.

2. I reject, as not supported in the record, the District Court's finding of fact that " * * * insufficient clearance on the leased premises was the proximate cause of the accident and resulting injuries to plaintiff's employee, John Michael Musgrove." This was at most passive negligence, but it was the active negligence of the railroad company which hurtled Musgrove against the beam box it knew was there in the way.