KANSAS CITY POWER & LIGHT COM-
PANY, Plaintiff-Appellant,

v.

UNITED TELEPHONE COMPANY OF
KANSAS, INC., Defendant-Appellee.

No. 71–1175.

United States Court of Appeals,
Tenth Circuit.

April 17, 1972.

Rehearing Denied June 6, 1972.

Charles S. Fisher, Jr., Topeka, Kan.
(James E. Benfer, Jerry R. Palmer,
Robert D. Ochs and David L. McLane,
Topeka, Kan., with him on the brief),
for plaintiff-appellant.

John J. Jurcyk, Jr., Kansas City, Kan.
(Willard L. Phillips and Robert E. Fabi-
an, Kansas City, Kan., with him on the
brief), for defendant-appellee.

Before LEWIS, Chief Judge, and
PICKETT and DOYLE, Circuit Judges.

PICKETT, Circuit Judge.

Kansas City Power & Light Company brought this action seeking indemnity under an agreement with the United Telephone Company of Kansas, Inc. for damages which it paid to one of the telephone company's employees injured while working on a power company transmission pole located in Kansas. The agreement, for a valuable consideration, authorized joint use of the poles. Upon trial to the court without a jury, the right to indemnity was denied because of the determination that the damages were caused by the power company's own negligence. Kansas City Power & Light Company contends that the contract provisions disclose that the parties intended that it was entitled to indemnity in all cases in which it was required to pay damages for injuries to telephone company employees while working on power company poles.

The essential facts are summarized as follows:

Dennison, a telephone company employee, was severely injured by a falling power company pole upon which he was working. Dennison brought suit against the power company to recover damages. Upon request, the telephone company refused to defend. Thereafter the power company confessed judgment in the amount of $26,000 and costs. The parties agree that this sum was a fair and reasonable amount in settlement of Dennison's claim.

█ It was stipulated at trial that the power company had prior to the accident removed the pole on which Dennison was working when injured and reset it temporarily in another location to permit certain construction in the area to proceed. It was agreed that in the resetting process the pole was not installed to the power company's standard depth of from five to six feet, but due to a rock condition it was installed only to a depth of approximately two to three feet. No notice was given of this condition. Upon consideration of the stipulation and additional evidence relating to negligence, the trial court found that the power company's negligence was the sole cause of Dennison's injuries. It denied indemnity, holding that under Kansas law the contract provisions were inadequate to protect the power company for damages resulting from its own negligence. We agree that the evidence sustains the trial court's finding that the proximate cause of Dennison's injuries was the power company's negligence and that the telephone company and Dennison were free from negligence.[1]

The issue here is whether the provisions of the license agreement are broad enough to require indemnity to the power company for losses occasioned by its own negligence. The indemnifying provisions of the contract are:

"It is agreed and understood by both parties that neither party guarantees the safety of any pole, guy, guy wire, stay wire, or crossarms, and it is distinctly understood and agreed that each party assumes for itself and its employees the obligation of inspecting and ascertaining the present or future condition of all poles, guys, guy wires, stay wires, and crossarms. Each party hereto agrees that it will release and save harmless the other from any and all claims for damages to its property or personnel caused by or arising out of the installation, use, operation, or maintenance of poles, guys, guy wires, crossarms, or the installation, use, operation, or maintenance of attachments not owned by it and affixed to joint-used poles. * * * *"

█ The liability of the telephone company to indemnify is to be determined in accordance with Kansas law. Gushee v. Kalen, 449 F.2d 1276 (10th

---

1. Appellant does not seriously challenge the trial court's finding of fact as to its negligence and does not contend that it was unsupported by sufficient evidence or as being clearly erroneous. Indeed, it asserts that it is entitled to indemnification even though it has been found to be negligent.

Cir. 1971); Allied Mutual Casualty Corp. v. General Motors Corp., 279 F.2d 455 (10th Cir. 1960); Security Insurance Co. of New Haven v. Johnson-Bratcher Const. Co., 276 F.2d 182 (10th Cir. 1960); United States v. Acord, 209 F.2d 709 (10th Cir. 1954).

Negligence of the indemnitee as a defense and the question of whether an indemnity agreement was intended to cover the consequences of such negligence has been considered by this court in a variety of cases and the law of various jurisdictions has been applied. See Pittsburgh-Des Moines Steel Co. v. American Sur. Co. of N. Y., 365 F.2d 412, 415 (10th Cir. 1966).

■ The general rule is that private contracts exculpating one from the consequences of his own acts are looked upon with disfavor by the courts and will be enforced only when there is no vast disparity in the bargaining power between the parties and the intention to do so is expressed in clear and unequivocal language. United States v. Seckinger, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed. 2d 224 (1970); Southern Pacific Transportation Co. v. Nielsen, 448 F.2d 121 (10th Cir. 1971); Mee v. Service Specialists, Ltd., 432 F.2d 30 (10th Cir. 1970); Allied Hotels Company, Ltd. v. H. & J. Construction Co., Inc., 376 F.2d 1 (10th Cir. 1967); Titan Steel Corporation v. Walton, 365 F.2d 542 (10th Cir. 1966); Sinclair Oil & Gas Company v. Brown, 333 F.2d 967 (10th Cir. 1964); Mohawk Drilling Company v. McCullough Tool Company, 271 F.2d 627 (10th Cir. 1959); Sinclair Prairie Oil Co. v. Thornley, 127 F.2d 128 (10th Cir. 1942).[2] However, the courts have not agreed upon the language necessary to manifest such an intent. It has been held that general words are not sufficient to bind the indemnitee unless there is specific reference to negligence. Other courts have held that the intent can be shown without specific reference to negligence by clear and explicit language in the agreement. Standard Ins. Co. of N. Y. v. Ashland Oil & Refining Co., 186 F.2d 44 (10th Cir. 1950). See Colorado Milling & Elevator Co. v. Chicago R.I.&.P.R. Co., 382 F.2d 834 (10th Cir. 1967).

The trial court found no reported Kansas Supreme Court decisions construing similar contractual provisions and we have found none. Relying on a prior decision of that court for authority, the court concluded that the indemnity provision in this instance was insufficient to convey such an intent. Referring to its former decision, the court stated:

"In Hedges v. Fischbach & Moore, No. KC–2507 (D.Kan.1967 Unreported), the court considered the same question which it presently faces in a different factual context. In holding that the agreement in that case was insufficient to require indemnification, I commented: ' * * *. However, it seems to this court that the better rule, and that which the Kansas courts would follow, holds that some express language must appear in an indemnity agreement before it will be regarded as indemnifying a party thereto against his own fault. This would be in better accord with the probable intent of the parties, which is the governing factor sought by judicial construction. It is reasonable to suppose that a party, wishing to guard against loss resulting from his personal breach of duty, and another party, agreeing to assume responsibility therefore, would do so in definite and express terms.' "

■ We are of the opinion that the trial court did not err in applying the general rule applicable in such cases and in concluding that the indemnification agreement was insufficient to require indemnity to the power company for

---

2. A concise statement of the rule is found in Mostyn v. Delaware, L. & W. R. Co., 160 F.2d 15 (2d Cir. 1947), where it was said:

" . . . If the indemnitee means to throw the loss upon the indemnitor for a fault in which he himself individually shares, he must express that purpose beyond any peradventure of a doubt."

**180**

acts of its own negligence. In Talley v. Skelly Oil Company, 199 Kan. 767, 433 P.2d 425 (1967), the Kansas Supreme Court upheld a judgment requiring indemnity on a provision which provided: "Lessee, for himself, his heirs, personal representatives and assigns, hereby covenants and agrees to indemnify, * * * from any and all claims, demands and liability for any loss, damage, injury or * * * whether due to negligence of Lessee, Lessor, or otherwise." The contract in this case, of course, makes no specific reference to liability to indemnify if loss is occasioned by the negligence of one of the parties, as it did in the *Talley* case. At least there is doubt as to whether the parties intended that the indemnitor should be liable to the indemnitee for a loss occasioned by its own negligence. In such cases we ordinarily accept the trial court's judgment as to the application of the state law. Sutton v. Anderson, Clayton & Company, 448 F.2d 293, 297 (10th Cir. 1971); Coca-Cola Bot. Co. of Steamboat Springs v. Coca-Cola Co., 447 F.2d 635, 638 (10th Cir. 1971); Hardberger & Smylie v. Employers Mut. L. Ins. Co. of Wis., 444 F.2d 1318 (10th Cir. 1971).

Affirmed.

LEWIS, Chief Judge (dissenting).

Unlike my Brothers I have no difficulty in interpreting the contract language we here consider as expressing in clear and unequivocal language an intent to indemnify under the facts of this case. Indeed, I would have difficulty in conceiving how a valid claim of this nature could arise against the owner of a pole except through the sole negligence of the owner. See Rice v. Pennsylvania R. Co., 2 Cir., 202 F.2d 861, 862. Nor do I see why courts should look with disfavor upon *mutual* contracts of indemnity entered into for cooperative and mutual interests. The harshness of an unilateral contract of indemnity does not exist in mutual contracts and certainly not in the case at bar.