Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| JOSÉ RIVERA RUIZ Y OTROS<br><br>Recurrida<br><br><br>v.<br><br><br>MULTINATIONAL INSURANCE COMPANY Y OTROS<br>Peticionaria | TA2026CE00166 | *Certiorari*<br>procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br><br>Caso Núm.:<br>MZ2025CV00192<br><br><br>Sobre:<br>Daños y Perjuicios |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli.

Candelaria Rosa, Juez Ponente

### RESOLUCIÓN

En San Juan, Puerto Rico, a 6 de abril de 2026.

Comparece Multinational Insurance Company vía *certiorari* y solicita que revoquemos la *Resolución* del Tribunal de Primera Instancia, Sala Superior de Mayagüez, emitida el 24 de noviembre de 2025. En dicho dictamen, se resolvió sin lugar la moción de sentencia sumaria de la peticionaria. Por los fundamentos que expondremos, denegamos expedir el auto de *certiorari*.

En síntesis, el 9 de abril de 2024, Multinational otorgó póliza de seguro MPP 0429006 02 a favor del señor José E. Martínez Campos y la señora Judibelle Rivera de Jesús, con una duración de 29 de mayo de 2024 hasta el 29 de mayo de 2025. Dicha póliza cubría una Ford Mustang del año 2023 cuyo propietario era el hijo de los asegurados, el señor José Enrique Martínez Rivera, según un documento de *trade-in* de la compañía Flagship Ford de Carolina, un *Permiso para Vehículos*

*de Motor o Arrastres* del Departamento de Transportación y Obras Públicas (DTOP) y una *Certificación sobre Vehículo de Motor* de la Oficina del Comisionado de Seguros (OCS). Este contrato se expidió luego del corredor de seguros, 4 Point Insurance, CSP, comunicarse con Multinational para que se incluyera el vehículo antes mencionado, adjunto los documentos que certificaban la titularidad del señor Martínez Rivera sobre el mismo.

En lo pertinente al presente caso, la póliza de Multinational dispuso que cubrirá toda lesión corporal o daño propietario del cual el asegurado es responsable a causa de un accidente automovilístico. Asimismo, un asegurado incluyó toda relación familiar en cuanto la titularidad, mantenimiento o uso del vehículo. No obstante, un *Endoso de Exclusión de Menores* explicó que la póliza no aplicará a reclamaciones que surjan de accidentes mientras cualquier vehículo cubierto sea manejado u operado por un conductor menor de veinticinco (25) años, a menos que el mismo haya sido nombrado conductor adicional en las declaraciones de la póliza. No obstante, si el menor no tiene otro seguro disponible, esta exclusión no aplicará hasta los límites de responsabilidad financiera de la *Ley de Seguros de Responsabilidad Obligatorio para Vehículos de Motor*.

El 5 de diciembre de 2024 y cuando tenía veintiún (21) años, el señor Martínez Rivera conducía un vehículo Ford Mustang, a exceso de velocidad y en un presunto estado de embriaguez, cuando perdió control del volante e impactó un árbol, consecuentemente causando la muerte de tres (3) jóvenes, entre los cuales estaba el señor José Rivera Rivera. A razón de ello, los familiares del señor Rivera Rivera presentaron una demanda—y eventualmente demanda enmendada—

por daños y perjuicios en contra el señor Martínez Rivera, el señor Martínez Campos, la señora Rivera de Jesús, Multinational, 4 Point Insurance y AIG Insurance Company.

Luego de varios trámites procesales, Multinational solicitó que se dictara sentencia sumaria, toda vez que la póliza expedida por ésta a favor de los padres del señor Martínez Rivera, y sobre el vehículo de motor en controversia, no cubre reclamaciones que surjan de accidentes mientras cualquier vehículo asegurado sea manejado u operado por un conductor menor de veinticinco (25) años. En oposición, la parte recurrida argumentó que el señor Martínez Rivera es un asegurado de Multinational, más que la aseguradora sabía o debió saber que el vehículo Ford Mustang estaba registrado a nombre de dicha persona. Entre tanto, el 17 de junio de 2025 el Tribunal recurrido emitió una *Sentencia Parcial* para desestimar la demanda contra el señor Martínez Campos, la señora Rivera de Jesús y la Sociedad Legal de Gananciales compuesta por ambos, más el 25 de septiembre de 2025 el Tribunal recurrido desestimó la demanda contra 4 Point Insurance y AIG.

Evaluados los argumentos de las partes, el Tribunal recurrido denegó emitir sentencia sumaria ya que, al todavía existir prueba contradictoria sobre los hechos del caso, se requiere la celebración de una vista evidenciaria para dilucidar hasta dónde se extiende la cobertura de la póliza en controversia y si Multinational realizó la mínima diligencia antes de expedir esta póliza de seguros. Ante la moción de reconsideración de Multinational, dicho foro resolvió sin lugar.

Insatisfecha, la peticionaria recurre ante este Tribunal y alega que el Tribunal de Primera Instancia erró al concluir que existen elementos

de intención y consentimiento en torno al alcance de la cubierta de la póliza número MPP 0429006 02 y efectividad del *Endoso de Exclusión de Menores*; esto incluye el que 4 Point Insurance fue el encargado de gestionar la póliza de seguro personal, más que la póliza solamente cubre el vehículo Ford Mustang, y no al señor Martínez River. Presentada la oposición de la parte recurrida, resolvemos.

El auto de *certiorari* es el vehículo procesal discrecional y extraordinario mediante el cual un tribunal de mayor jerarquía puede rectificar errores jurídicos, tanto en el ámbito provisto por la Regla 52.1 de Procedimiento Civil de 2009 (32 LPRA Ap. V), como de conformidad con los criterios dispuestos por la Regla 40 de este Tribunal de Apelaciones, *supra*. Véase, también, *IG Builders v. BBVAPR*, 185 DPR 307 (2012). En tal sentido, la función de un tribunal apelativo frente a la revisión de controversias a través del *certiorari* requiere valorar la actuación del foro de primera instancia y predicar su intervención en si la misma constituyó un abuso de discreción; en ausencia de tal abuso o de acción prejuiciada, error o parcialidad, no corresponde intervenir con las determinaciones del Tribunal de Primera Instancia. *800 Ponce de León v. AIG*, 205 DPR 163 (2020); *Citibank v. ACBI*, 200 DPR 724 (2018).

Conforme lo anterior, el mecanismo procesal de la sentencia sumaria se rige por la Regla 36 de Procedimiento Civil, *supra*, y tiene como finalidad la solución justa, rápida y económica de litigios civiles que no contengan controversias genuinas de hechos materiales. Véase *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601 (2023) (citando a *Segarra Rivera v. Int'l. Shipping et al.,* 208 DPR 964 (2022)). Así, la Regla 36.2 permite que cualquiera de las partes pueda solicitar

que se dicte sentencia sumaria sobre la totalidad o sobre cualquier parte de una reclamación. Regla 36.2 de Procedimiento Civil, *supra*. Véase, también, *Torres Pagán et al. v. Mun. de Ponce,* 191 DPR 583 (2014). A su vez, se ha establecido que el peticionario debe establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material, es decir, suficiente para que sea necesario dirimirlo en un juicio plenario. Regla 36.1 de Procedimiento Civil, *supra*; *Oriental Bank v. Caballero García*, 212 DPR 671 (2023) (citando a *Mun. de Añasco v. ASES et al.*, 188 DPR 307 (2013)). Véase, también, *Ramos Pérez v. Univisión,* 178 DPR 200 (2010) (citando a *Luan Invest. Corp. v. Rexach Const. Co.*, 152 DPR 652 (2000)).

En cuanto al estándar de revisión aplicable, el Tribunal de Apelaciones utilizará los mismos criterios que el Tribunal de Primera Instancia al determinar la correspondencia de la sentencia sumaria, aunque limitado a considerar aquellos documentos presentados en el foro primario y obligado a cumplir con la Regla 36.4 de Procedimiento Civil, *supra*. Debemos, por tanto, examinar *de novo* el expediente y verificar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma; luego, revisar si en realidad existen hechos materiales en controversia y, de encontrar que los hechos materiales realmente están incontrovertidos, revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100 (2015).

Ahora bien, el contrato es el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones. Art. 1230 del Código Civil de 2020, 31 LPRA sec. 9751. Para perfeccionarse el

contrato, las partes contratantes deberán manifestar su consentimiento sobre el objeto y la causa del acuerdo, excepto en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva. Íd., sec. 9771. Asimismo, las partes pueden acordar cualquier pacto, cláusula que no sea contraria a la ley, a la moral o al orden público y, en efecto, los contratos tienen fuerza de ley entre las partes. Íd., secs. 9753, 9754. Además, si los términos del contrato son claros y no dejan duda sobre la intención de las partes, se interpretará el lenguaje en su sentido literal y, de las palabras parecer contrarias a la intención evidente de las partes, prevalecerá la intención sobre lo expresado. Íd., sec. 6342.

A raíz de ello, los contratos de adhesión son aquellos en las cuales una sola parte dicta las condiciones del contrato y la otra ha de aceptar. *SLG Francis-Acevedo v. SIMED*, 176 DPR 372 (2009) (citando a *Zequeira v. CRUV*, 83 DPR 878 (1961)). Éstos están redactados de una manera uniforme, generalizada y sin preocupación por la elección del cliente, más que la intervención de una de las partes consiste en su mera formalidad, involuntaria y sin haber sido resultado de una negociación equitativa. M.A. Torres, *El contrato de adhesión en la era de la reforma laboral: Un análisis del impacto de la contratación laboral luego de la Ley 4-2017*, 11 UPR Bus. L. J. 1 (2020) (citando a R. Ortega-Vélez, *Diccionario Jurídico: Derecho puertorriqueño*, 2.ª ed., San Juan, Ed. Chrisley, 2008, pág. 156; 2 J. Puig Brutau, *Compendio de Derecho Civil*, 3.ª ed., Barcelona, Ed. Bosch, 1997, pág. 292). Ante estos tipos de contratos, el foro primario deberá evitar interpretarlos de modo irrazonable. *Coop. Sabaneña v. Casiano Rivera*, 184 DPR 169 (2011) (citando a *RC Leasing Corp. v. Williams Int. Ltd.*,

103 DPR 163 (1974)). A esos efectos, será nulo la cláusula de relevo cuando una parte se encontró obligada a aceptar el relevo. *Chico v. Editorial Ponce, Inc.*, 101 DPR 759 (1973) (citando a *Donna v. Con Edison*, 337 N.Y.S.2d 772 (1972); *Kansas City Power & Light Co. v. United Tel. Co. of Kan.*, 458 F.2d 177 (1972); *Delta Airlines, Inc. v. Douglas Aircraft Company*, 238 Cal.Rptr. 518 (1966); *Henningsen v. Bloomfield Motors, Inc.*, 161 A.2d 69 (1960)); *Cabrera v. Doval*, 76 DPR 777 (1954).

Dicho esto, un contrato de seguro es uno de adhesión, por lo cual las cláusulas dudosas o ambiguas deberán interpretarse liberalmente en beneficio del asegurado y, en efecto, las cláusulas de exclusiones son desfavorecidas y deberán interpretarse restrictivamente en contra del asegurador. *Rivera Matos v. ELA*, 204 DPR 1010 (2020) (citando a *Viruet et al. v. SLG Casiano-Reyes*, 194 DPR 271 (2015); *Natal Cruz v. Santiago Negrón et al.*, 188 DPR 564 (2013); *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880 (2012); *Jiménez López et al. v. SIMED*, 180 DPR 1 (2010); *SLG Francis-Acevedo v. SIMED*, *supra*; *Monteagudo Pérez v. ELA*, 172 DPR 12 (2007)). A su vez, le corresponde al asegurado el peso de la prueba para establecer su reclamación, mientras que la aseguradora deberá evidenciar que aplica alguna exclusión. Íd.

Así las cosas, ningún convenio que esté en conflicto con el contrato de seguro o que lo enmiende o amplíe será válido a menos que fuere por escrito y se hiciere formar parte de la póliza. Art. 11.180 de la Ley Núm. 77 de 19 de junio de 1957 (26 LPRA sec. 1118). A esos efectos, un endoso contingente es aquel documento que, junto a la póliza de seguros, modifica, añade, limita o elimina algún aspecto de la

cubierta de dicha póliza. *Carrasquillo Pérez v. Asoc. de Titulares del Condominio Parque 352*, 214 DPR 1033 (2024) (citando a 1 *New Appleman on Insurance Law Library Edition* Sec. 1.07[8], págs. 1-88.1—1-88.2 (2009)). Mediante esta personalización de una póliza de seguros, las aseguradoras podrán delimitar los términos y las condiciones de las pólizas a las necesidades específicas de sus clientes y limitan el riesgo en el que incurrirán en una eventualidad. Íd. (citando a 1 *New Appleman on Insurance Law Library Edition*, *op. cit.*, pág. 1-88.2).

Conforme lo anterior, el Código de Seguros dispone que ningún asegurador efectuará algún seguro directo sobre una persona, propiedad u otro objeto material del seguro residente, si no es por conducto de un representante autorizado de dicho asegurador que resida en Puerto Rico. Arts. 3.290 y 9.021 de la Ley Núm. 77 de 19 de junio de 1957 (26 LPRA secs. 329, 949b). Asimismo, el gerente, agente general o representante autorizado del asegurador será quien refrendará las pólizas y los contratos. Íd., sec. 329. Tal representante autorizado es aquel productor—o persona con licencia para gestionar seguros en Puerto Rico—que suscribirá un contrato con un asegurador para gestionar en su nombre, ya sea como empleado o como contratista independiente. Íd., secs. 949a, 949b. Mientras tanto, agente será aquella persona, razón social o corporación que (1) gestionará la compra de contratos de servicios a automovilistas; o (2) ayudará en alguna forma en la entrega o negociación de cualquiera de estos contratos, su renovación o continuación. Íd., sec. 2101. Más específico aún, un agente general será la persona nombrada por un asegurador como contratista independiente con poderes o deberes generales para

inspeccionar el otorgamiento y las operaciones de servicio de pólizas del asegurador. Íd., sec. 949e.

En el presente caso, no advertimos que el Tribunal de Primera Instancia haya errado o abusado de su discreción al resolver sin lugar la solicitud de sentencia sumaria de la peticionaria. Del expediente se desprende la existencia posible y/o eventual de una contradicción de intención y conocimiento entre los actos de la aseguradora y lo descrito en la póliza de seguros y endoso. Más aun, ante la alegación de Multinational de que 4 Point Insurance no presentó ante la aseguradora la información suficiente para determinar que el señor Martínez Rivera sería quien conduciría el vehículo, y que la póliza solamente cubre dicho vehículo y no al conductor, es forzoso concluir que la misma peticionaria puso en duda la secuencia y propósito de los hechos en controversia. Por tanto, por la existencia de preguntas fundamentales en cuanto la extensión de cubierta de la póliza, no divisamos una razón por la cual revocar la determinación del Tribunal recurrido.

Por los fundamentos que expondremos, denegamos expedir el auto de *certiorari*.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones