PEEK, P. J.
 

 The present controversy arises out of a contract by which defendant Hazel Willburn, and her husband, now deceased, agreed to sell to one Dolan, the assignor of plaintiff Mad River Lumber Sales, Inc., a corporation, certain timber located in Trinity County. The contract gave Dolan the right to remove all merchantable timber during a 10-year period at certain specified rates. It further provided that title to the timber would pass to the buyer, pursuant to the terms of the contract. Among other things, the contract contained the following provision:
 

 “Neither party hereto shall terminate this contract by reason of the breach of any of the terms, covenants, and conditions hereof on the part of the other party to be kept or performed without first giving notice in writing to such other party of such breach, specifying the general nature thereof and requesting the same to be remedied, corrected, or discontinued within fifteen (15) days thereafter. If said breach be remedied, corrected or discontinued with
 
 [sic]
 
 said fifteen (15) day period and the acts complained of be discontinued, if they are of a continuing nature, then, and in that event, this contract shall not be terminated by reason of said breach so remedied, corrected, or discontinued, but if said breach be not so remedied, corrected, or discontinued within said fifteen (15) day period, or if said acts be not so. discontinued, if they are of a continuing nature, then, and in either of said events the complaining party may terminate this contract after the expiration of said fifteen (15) day period by reason of said breach. ’ ’
 

 During the negotiations for the contract, Dolan was informed by the Willburns that they had previously given to one Haschke a contract or option to buy the timber; that Haschke had made no payments and the Willburns had can-celled the contract. As a result of the negotiations, it was
 
 *323
 
 agreed that in the event Haschke asserted any claim to the timber, Dolan would at his own expense provide a defense for the Willburns and that if the defense were unsuccessful, the Willburns would refund to Dolan his down payment.
 

 The day following the discussion of the Dolan-Willburn contract, Haschke instituted suit against the Willburns to quiet title to the timber. Operations under the W illburn-D olan contract were suspended during the next few years while negotiations to settle the Haschke suit were carried on. The suit was finally settled by Mad River, Dolan’s assignee, giving to the Van Duzen Lumber Company, Haschke’s assignee, a contract permitting Van Duzen to take timber from certain specified areas of the Willburn property. The Van Duzen contract duplicated in all substantial respects the terms of the W illburn-D olan contract, except price. The Haschke suit was then dismissed with prejudice.
 

 The evidence indicated that Van Duzen’s operations were not in conformity with good logging practices; that the Will-burns complained of these matters, but Van Duzen did nothing; and that subsequently Mad River was requested to clean up the area. Although Mad River complied to a degree with the request, it abandoned such work after a few days and shortly thereafter commenced its own logging operations in another area. Mrs. Willburn continued to complain of the manner in which the logging was being conducted and subsequently suggested the contract be cancelled because of alleged breaches.
 

 On August 13, 1956, Mrs. Willburn placed a chain across the road used by Mad River employees, thereby preventing them from entering the property. On August 15, 1956, Mrs. Willburn sent a notice of default to Mad River. The notice listed numerous alleged defaults which in general related to : (1) the manner in which logging operations had been carried on; (2) the failure to pay taxes, and (3) the failure to pay for timber previously cut. The notice concluded with the following paragraph:
 

 “You are hereby requested and notified to remedy, correct and discontinue each and all of the breaches of said agreement above specified within fifteen (15) days after receipt of this request and notice. ’ ’
 

 In May 1958, Mad River commenced the present action to enjoin Mrs. Willburn from interfering with its rights to log the property. Mrs. Willburn answered and by cross-complaint sought a decree declaring the contract terminated. The trial
 
 *324
 
 court found that Mad River had breached the contract in many respects and declared the contract terminated. This appeal followed.
 

 Only one of Mad River’s contentions need be considered on this appeal: that the notice of August 15, 1956 (the notice of breach), was ineffectual to terminate the contract since Mrs. Willburn had prior thereto prevented access to the logging area. With this contention we must agree.
 

 Mrs. Willburn could only terminate the contract in accordance with the terms specified in the contract and by which she had limited her power of termination for breach. By its terms she agreed to give Mad River 15 days in which to correct and remedy any default. Furthermore, implicit in the contract was a provision that she would not hinder or prevent Mad River from correcting or remedying its breach. As stated in 6 Corbin on Contracts section 1266, page 63:
 

 “A power may be reserved to one party to terminate the contract if the other party fails to render specified performances or to produce certain results. Here, the failure of the other party is a condition precedent to the existence of the power. If the performance or results so specified can not be brought about without the co-operation of the first party, a promise to co-operate will usually be implied on his part. He 'will be deprived of the power to terminate if he is himself a wrongful cause of the other’s failure to perform or to produce the results. His power to terminate will be held to be constructively conditional on his own co-operation. His failure to co-operate.is wrongful; and he cannot take advantage of his own wrong.” (See also
 
 Vanadium, Corp.
 
 v.
 
 Fidelity & Deposit Co.,
 
 159 F.2d 105;
 
 American Louisiana Pipe Line Co.
 
 v.
 
 Gulf Oil Corp.,
 
 180 F.Supp. 155, affirmed 282 F.2d 401.)
 

 The evidence is uneontradicted that Mrs. Willburn prevented Mad River from correcting its deficiencies by putting a chain across the road. Because of such action, she was precluded from seeking a judicial determination that the contract had been terminated by any breach of Mad River, By the terms of the contract Mad River was entitled to a period of 15 days within which to correct any deficiencies, but by reason of the acts of defendant, it has not had the opportunity it was entitled to by the contract. To allow judgment to stand would permit Mrs. Willburn to profit by her own wrong.
 

 .It maybe argued, however, that some of the deficiencies of Mad River could not be corrected, but this would not neees
 
 *325
 
 sarily require termination of the contract. As stated in 6 Corbin on Contracts section 1253, pages 7-10:
 

 “It is not always that a breach of contractual duty by one party to a bilateral contract discharges the duty of performance on the part of the other. As the term ‘breach’ is used, a contractor who has committed a breach is guilty of a wrong for which some remedy is available, the remedy varying with the ease. Being guilty of a wrong does not make him an outlaw or deprive him of all rights, even the rights that were created by the very contract that he breaks. This is true, in spite of many a contrary dictum, even when his breach is ‘wilful.’ Indeed, it seems best to say that breach by one party never discharges the other party, regarding breach merely as a wrong without regard to the extent and quality of its ill effects. When those ‘effects’ are so material to the interests of the other party that a mere judicial remedy is not sufficient to satisfy the requirements of justice as felt by the community the legal duty of the other party is either suspended or discharged.”
 

 Under the rule as stated it would appear that Mad River should have a chance to correct its deficiencies. Whether or not this had been done would be for the court to determine, as would be the question as to whether the deficiencies are so material as to discharge the contract. But until Mad River has the opportunity to do so, it would be improper to declare the contract terminated.
 

 The judgment is reversed.
 

 Schottky, J., and Pierce, J., concurred.
 

 A petition for a rehearing was denied July 20, 1962.