**HUBLER RENTALS, INC. and Cyrus Gutman and Benson N. Schamblan, Receivers for Hubler Rentals, Inc., Debtor and I. Cyrus Gutman, Trustee for Hubler Rentals, Inc., Bankrupt, Appellees,**

v.

**ROADWAY EXPRESS, INC., Appellant.**

**No. 79–1110.**

United States Court of Appeals, Fourth Circuit.

Argued June 5, 1980.

Decided Jan. 9, 1981.

258

David F. Albright, Baltimore, Md. (Charles R. Moran, Franklin T. Caudill, Semmes, Bowen & Semmes, Baltimore, Md., on brief), for appellant.

Malcolm L. Lazin, Philadelphia, Pa. (Fell, Spalding, Goff & Rubin, Morris L. Chucas, Philadelphia, Pa., Michael A. Bloom, Wasserstrom & Chucas, Philadelphia, Pa., J. Cookman Boyd, Jr., James Whattam, Sauer-

wein, Boyd, Decker & Levin, Baltimore, Md., on brief), for appellees.

Before WINTER and SPROUSE, Circuit Judges, and HOFFMAN,* Senior District Judge.

PER CURIAM:

In this diversity action, Hubler Rentals, Inc. (Hubler) sued Roadway Express, Inc. (Roadway) for wrongful termination of a contract under which Hubler leased motor vehicles to Roadway, a common carrier engaged in the interstate transportation of freight, for use by Roadway for local pickup and delivery. Roadway counterclaimed, alleging principally that Hubler had breached its obligation to maintain and service the vehicles in such a way as to enable Roadway to conduct normal operations. Roadway also counterclaimed for tortious conversion of fuel, fraudulent overcharges for parts and services and damages allegedly caused by Hubler to Roadway's Laurel, Maryland, garage facility.

After a protracted bench trial, the district court, 459 F.Supp. 564, made extensive findings of fact and stated its conclusions of law. It ruled that Roadway had terminated the contract in a manner different from the sole method of termination provided in the contract, so that its purported termination was a repudiation of the agreement constituting a breach by Roadway. For this breach, the district court awarded Hubler $170,799.54 with $66,373.17 prejudgment interest.** The district court found that Hubler had also breached its contractual obligation to maintain and service the vehicles it leased to Roadway but that, under Maryland law, Roadway could not recover for the breach since it too had breached the contract. With regard to its other counterclaims, the district court awarded Roadway $2,347.80 with prejudgment interest of $1,169.40 for fuel conversion but concluded that, although it could be found that Hubler overcharged for parts, "there is no reasona-

ble basis in the record for the court to assess damages even if it were to make such a finding." Roadway withdrew its claim for damage to its garage at trial.

Roadway has appealed. We affirm in part and reverse in part.

I.

■ Our examination of the record persuades us that the district court had a firm and substantial evidentiary base for its finding that Roadway terminated the contract not in accordance with the contract provisions for termination so that it breached the contract by unauthorized termination. Roadway had earlier sought to terminate the agreement by purchasing all of the vehicles; but when Hubler declined to sell them at the price that Roadway was willing to pay, Roadway embarked on a plan to assemble sufficient evidence of nonperformance on the part of Hubler to enable Roadway to terminate the agreement for cause. Such evidence, as we hereafter develop, was not lacking, but under the terms of the agreement, breaches on the part of Hubler did not give rise to a right on the part of Roadway to terminate unless Hubler failed to correct the breach within twenty days after Roadway gave written notice "specifying with substantiating evidence the nature, time, place, circumstances and all other available information relevant to the breach ..." While Roadway, on December 8, 1971, wrote three letters to Hubler, we agree with the district court that they failed to comply with the termination provisions of the agreement. Although they alerted Hubler to the evidence of maintenance problems concerning the vehicles and although by internal investigation Hubler could probably have determined that it was in default in carrying out its undertaking to maintain and service the vehicles, we do not think that the letters satisfied or relieved Roadway of its contractual obligation to

* Honorable Walter E. Hoffman, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

** The district court also awarded Hubler $37.37 for an improper deduction made by Roadway from an invoice submitted by Hubler for truck rentals.

provide specific data when claiming a breach of contract giving rise to a right of termination. As a consequence, Roadway's purported termination of December 29, 1971 was legally ineffective and constituted a breach of the agreement on account of which Hubler terminated the agreement on January 28, 1972.

■ We are also persuaded that Hubler was substantially in default under the agreement. Hubler covenanted to maintain each leased vehicle so as to enable Roadway "to conduct normal business operations." The agreement not only spelled out that an objective of the agreement was to enable Roadway "satisfactorily" to use the leased vehicles to enable it to conduct "normal business operations," but it stressed that "service and maintenance of the vehicles are essential to that objective" and that Roadway had chosen to lease, rather than buy, the vehicles furnished by Hubler "as an inducement to Hubler for its efficient service and maintenance thereof." Of course, the agreement provided Hubler would provide substitute vehicles for any leased vehicle which might become inoperable, but we deem this contractual obligation to be in addition to its covenant to maintain the vehicles so as to enable Roadway to conduct normal business operations and not an independent, alternative option of performance.

The district court found that "the degree of maintenance to the leased vehicles by Hubler in the latter half of 1971 was insufficient to enable Roadway ... 'to conduct normal business operations' as required by the Agreement." On this record, that finding is unassailable. The record includes not only those reports prepared by Roadway in anticipation of terminating the lease, but pickup and delivery failure and availability reports, prepared monthly in the ordinary course of business. They demonstrate an unusually high incidence of breakdowns in 1971. The 1971 breakdowns represent both an increase over the previous years and a higher rate than that experienced by Roadway after the lease was terminated. There was also testimony concerning numerous individual vehicle files illustrating the failure to perform any preventive maintenance after early 1971. The work orders show that no preventive maintenance was done, and the index cards which three Hubler officials claimed would reflect the work done were mysteriously missing. The evidence showed that repairs were not made until vehicles actually broke down. Indeed the record shows that Hubler falsified hundreds of work orders to correspond to repair requests which had not been honored.

## II.

In denying Roadway recovery from Hubler for its principal claim, the district court correctly summarized the applicable (and in this diversity action, controlling) Maryland law:

Performance of the contract by parties suing on it is a condition precedent to recovery. *Wischhusen v. Spirits Co.*, 163 Md. 565, [163 A. 685] (1933). Where a contractual duty is a condition precedent to recovery, non-performance of the condition bars recovery. *Laurel Race Course v. Regal Construction Co.*, 274 Md. 143, [333 A.2d 319] (1975). Having failed to properly terminate the Agreement ... [Roadway] is in a position analogous to one who has unjustifiably rescinded a contract. Such a party cannot prevail on a breach of contract action. *Macon v. Zeiler*, 233 Md. 160, [195 A.2d 687] (1963).

■ Inexplicably the district court did not discuss nor apparently consider the application of this rule to Hubler's claim against Roadway. The failure to apply the rule, we think, was error. "It is clear that in proper circumstances a court may refuse to allow recovery by either party to an agreement because of their mutual fault, which in contract terms might be more properly described as mutual default." *Westinghouse Electric Corp. v. Garrett Corp.*, 601 F.2d 155, 158 (4 Cir. 1979); *Accord, American Hot Rod Association v. Carrier*, 500 F.2d 1269 (4 Cir. 1974).

■ We think it certain that under Maryland law, a party suing on the contract

must first prove his own performance, or an excuse for nonperformance, in order to recover for any breach by the opposing party. *Laurel Race Course, Inc. v. Regal Const. Co., Inc.*, 274 Md. 142, 333 A.2d 319 (1975); *Wischhusen v. American Medicinal Spirits Co.*, 163 Md. 565, 163 A. 685 (1933). Hubler's breach of its covenant to maintain was a material one; the language of the agreement reflects that it was a condition precedent to Hubler's right to payment. Moreover, Hubler's breach temporally preceded Roadway's abortive attempt to terminate the agreement. The record reflects neither justification nor excuse for Hubler's breach. It follows that Hubler's judgment against Roadway cannot be permitted to stand.

■ Our dissenting brother is of the view that Roadway cannot defend itself from damages for its breach of contract (the inadequate notice of termination) by asserting Hubler's failure adequately to maintain the leased vehicles because Roadway did not avail itself of the breach to terminate the contract by giving proper notice. This thesis, in our view, confuses the separate concepts of (1) a breach of contract on the part of Hubler, and (2) Roadway's right to terminate the contract by following the ritual of termination prescribed by the contract. We do not think that Roadway's right to assert Hubler's breach of contract to immunize Roadway from damages for its breach depends in any part on whether it had properly terminated the contract. The breach, as found by the district court, was a breach irrespective of termination. Indeed, the contract itself presupposed the fact of a breach as the premise for termination as the breach was not corrected within the prescribed time after the prescribed notice. The fact of the breach, in our view, was all that the Maryland rule requires to bar Hubler from recovering damages for breach of contract from Roadway.

While we have found no Maryland authority precisely expressing our view, an analysis of its rationale shows that our conclusion is sound. The Restatement of Contracts § 274 (1932) expresses the rule that we are applying as follows:

§ 274. Failure of Consideration as a Discharge of Duty.

(1) In promises for an agreed exchange, any material failure of performance by one party not justified by the conduct of the other discharges the latter's duty to give the agreed exchange even though his promise is not in terms conditional. An immaterial failure does not operate as such a discharge.

(2) The rule of Subsection (1) is applicable though the failure of performance is not a violation of legal duty.

In Comment C on Subsection (2), it is said:

The law excuses a contracting party from performing his promise for a variety of reasons—infancy, insanity, impossibility caused in certain ways; *but however blameless in law and fact a party to a contract may be in failing to perform his promise, if he does fail he should not have what is promised in exchange for his performance.* (emphasis added)

It follows, we think, that if non-performance without fault is a bar to recovery of damages for the other contracting party's breach of contract, non-performance with fault but without exercise of the right of termination is also a bar.

III.

■ Hubler did not appeal from the judgment entered for Roadway for $2,347.80 on Roadway's counterclaim for tortious conversion of fuel. But since this claim was one sounding in tort and not one arising from breach of contract, we do not think that, under Maryland law, Roadway is barred from recovery because of its repudiation of the agreement. The judgment on this claim will be affirmed.

In contrast, Roadway's counterclaim for overcharges for parts is a contract claim since the method of charging was specified in a letter agreement, supplemental to the main agreement, and the claim is founded upon proof that the formula for charges was exceeded. Roadway is barred from recovery under Maryland law even if the amount of the overcharges could be proven.

AFFIRMED IN PART; REVERSED IN PART.

WALTER E. HOFFMAN, Senior District Judge, dissenting in part:

In an opinion requiring 69 pages of the Appendix to reproduce, the able district judge found for Hubler Rentals, Inc., (Hubler) against Roadway Express, Inc., (REX) in the sum of $237,210.08, same including pre-judgment interest to September 19, 1978, the date of the opinion. On the counterclaim asserted by REX against Hubler, the court found for REX in the sum of $3517.20, same including pre-judgment interest to the date of the opinion.[1] The trial judge made every essential finding and conclusion of law in his exhaustive opinion. Without hesitation, I would affirm in its entirety.

The majority has correctly stated that the judgment on the counterclaim should be affirmed, although it is not clear from the majority opinion whether REX can enforce the total judgment (including pre-judgment interest), or whether the recovery is limited to $2347.80 without pre-judgment interest. The opinion intimates the latter. Hubler did not appeal from this judgment. For reasons stated by the trial court in which the majority concurs, I also agree that the remaining assertions of the counterclaim were properly disallowed.

1. I agree with the majority that, *had an appeal by Hubler been effected*, the judgment should be reduced to $2347.80 as the recovery on the counterclaim by REX was in tort and, certainly as a general rule, pre-judgment interest should not be allowed. As noted, however, Hubler did not appeal the judgment on the counterclaim and this judgment is long since final. Rule 4(a)(3), F.R.App.P. I would permit the judgment in the sum of $3517.20 in favor of REX to stand, even though I agree that the lower court erred in allowing pre-judgment interest on the counterclaim sounding in tort.

2. At no place in the lease agreement (or contract) are the words "condition precedent" used. However, I agree that a "condition precedent" may be necessarily implied by law in an appropriate case. Whether the doing of an act by the obligee [Hubler] is a "condition precedent" of the obligation depends not on any hard and fast rule as to the time when the act is done, but on the intention of the parties as deduced from the whole instrument. *New*

The majority has reversed the judgment in favor of Hubler in the sum of $237,210.18 and, as I read the majority opinion, it is predicated upon a finding by the district court that Hubler breached a covenant to maintain the fleet of trucks sufficient to enable REX "to conduct normal business operations." Under Maryland law, the majority states, there can be no recovery by a party who breached a material covenant which is a condition precedent.[2] My disagreement with the majority is based upon an interpretation of the lease agreement between Hubler, as lessor, and REX, as lessee, according to a contract prepared by REX in 1968. The fact that a covenant by Hubler to maintain the 72 vehicle fleet of trucks in a condition such as to permit REX "to conduct normal business operations" may have been violated by Hubler is not *per se* a breach leading to a termination of the agreement under the terms of the lease agreement; nor does it bar a recovery by Hubler when REX terminated the agreement in violation of the terms of the lease agreement.

The majority states that the district court did not discuss nor apparently consider the "mutual fault" of the parties which, under Maryland law, would bar a recovery to either party. While I disagree with the majority's interpretation of the district court

*Orleans v. Texas & P. R. Co.*, 171 U.S. 312, 18 S.Ct. 875, 43 L.Ed. 178 (1898).

Of course, parties may agree upon a condition precedent upon which their liability shall depend. However, the rule is that to make a provision in a contract a "condition precedent," it must appear from the contract itself that the parties intended the provision so to operate. 17 *Am.Jur.2d, Contracts*, § 321, p. 752. Conditions precedent are not favored in law and courts should not construe such unless required to do so by plain, unambiguous language or by necessary implication. *Id.* § 321, p. 752. I cannot agree that the proper maintenance of the fleet of trucks constituted a condition precedent to the right of recovery for a wrongful termination of the lease agreement, until such time as the notice requirement under paragraph 8.f.2 had been given and Hubler had thereafter failed to cure "such breach" within 20 days.

opinion, I do concede that absent the notice requirement of paragraph 8.f.2, there would be sufficient evidence to find "mutual fault" which would bar or mitigate any recovery by Hubler. The majority agrees with the district court in finding that REX's purported termination letter of December 29, 1971 was legally ineffective and constituted a breach by REX which legally justified Hubler's later termination letter of January 28, 1972.

Understandably, in leasing a fleet of 72 vehicles under an agreement requiring the lessor to maintain at its expense each leased vehicle in good repair "so as to enable Lessee to conduct normal operations," there are bound to be instances involving defective parts, evidence of improper maintenance, breakdowns, etc. Literally, with vehicles three years of age when the principal difficulties arose, there would probably be instances of maintenance failure every day of REX's operations. However, it was always my view that a contract must be interpreted in its entirety and not be considered and interpreted by one isolated provision or covenant. Indeed, the mutual promises and stipulations were mutually dependent upon each other. There were other provisions of the lease agreement—all capably discussed by the trial court—which point to the fact that the maintenance covenant could not be triggered as a breach until Hubler, after having been given 20 days notice, failed to place the vehicle in an operable condition for normal use.[3]

To begin with, under paragraph 6.c. of the agreement, Hubler agreed to provide a "substitute vehicle" for any vehicle under repair at no cost to REX, and further contained a clause for the abatement of rental in the event of Hubler's failure to provide same. The district court found, during the entire operative period of the lease agreement, only one instance of failure to provide a "substitute vehicle" and the rent for the one day period of no replacement was abated. The one instance occurred on December 20, 1971, after the three ineffective complaint letters were mailed by REX to Hubler, and involved a breakdown of a "substitute vehicle" which had already replaced a regular vehicle which was inoperable on that day.

My primary complaint with the majority opinion lies in its failure to recognize that paragraph 8.f.2 (which is specifically referred to in paragraph 6.c of the "substitute vehicle" clause) is considered as isolated from and distinctly separate from paragraph 6.b. which requires Hubler to maintain and service the leased vehicles. The two paragraphs mentioned are quoted in the footnote.[4]

**3.** Paragraph 8.f.1 provides for the remedy in the event of breach: "*General*: If either party hereto breaches this agreement, the other party shall have the right to terminate it prior to the "Expiration Date Agreement. See Section 8.b."

**4.** Paragraph 6.b. provides:
"6. *Lessor Covenants*:

.        .        .        .        .

"b.  *Maintenance and Service*:
"To maintain at its expense each vehicle leased hereunder in good repair in all respects, so as to enable Lessee to conduct normal operations; to furnish at its expense all motor oil and other lubricants, labor, parts, supplies, tires; tire service, road service, winterizing, washing, and any other materials and services necessary to enable Lessee to conduct normal operations; and at its expense to pick up and return each vehicle at Lessee's terminal address designated in Schedule 'A' for servicing and repair."
Paragraph 8.f.2. reads as follows:

"2.  *Breach by Lessor*:
"a.  *Lessee's Right to Terminate*: If Lessor breaches any term or condition of this agreement, Lessee may give written notice to Lessor specifying with substantiating evidence the nature, time, place, circumstances and all other available information relevant to the breach; and if Lessor has not cured such breach as of the close of business on the twentieth (20th) calendar day following Lessee's mailing the aforesaid notice, Lessee may forthwith terminate this agreement as of the next day, namely, the twenty-first (21st) calendar day following Lessee's mailing such notice, by written notice of termination mailed to Lessor, and such twenty-first (21st) calendar day shall be designated as the 'Termination Date'; and any obligation of Lessee to Lessor for 'Rental Charge Per Week' and 'Rental Charge Per Mile', Schedule 'A', columns 9 and 11, respectively, applicable to any lease hereunder, shall cease to accrue as of the 'Termination Date'. Each of the aforesaid notices shall be in duplicate sent by

The majority agrees with the trial court that REX had not complied with paragraph 8.f.2 but, nevertheless, held that since Hubler had failed to fully comply with paragraph 6.b., Hubler could recover nothing. I respectfully disagree. The "condition precedent," as stated by the majority, with respect to compliance with paragraph 6.b. did not become operative until Hubler had failed to make the necessary repairs within 20 days from the mailing of the notice required by paragraph 8.f.2. As the district court succinctly pointed out, under Maryland law, if a method for termination of a contract which is outlined in the contract in detail, is *not made the exclusive* way of terminating the contract, the method referred to in the contract is deemed to be merely a cumulative remedy, and where a breach of the contract is material, the contractually suggested remedy does not bar the use by the injured party of other ordinary remedies for breach of contract, citing *Foster-Porter Enterprises v. DeMare*, 198 Md. 20, 81 A.2d 325 (1951). However, the same cited case clearly states that where the contractually defined method of termi-

nation of the contract *is made exclusive* by the terms of the contract, such contractually defined method of termination must be complied with in order for the termination of the contract to be valid and effective, citing, in addition to *Foster-Porter Enterprises*, references to *Baltimore & Ohio Railroad Company v. Stewart*, 79 Md. 487, 29 A. 964 (1894) and *Geiger v. The Western Maryland Railroad Co.*, 41 Md. 4 (1874).[5]

Under paragraph 8.b. entitled "Mutual Covenants", it is stated with respect to the "Termination of Agreement Prior to Expiration Date," the following:

"This agreement may be terminated prior to the aforesaid "Expiration Date of Agreement" *only* by (i) breach as stipulated in Section 8.f., or (ii) Lessor's election as stipulated in Section 8, d.1. . . . ." (Emphasis supplied).

Thus, the exclusive right to terminate was clearly expressed in the lease agreement and REX had no right to look to the apparent and determined violations of paragraph 6.b as a basis for termination. The District Court, in my opinion, correctly analyzed this problem where it said:

*Lucy, Lady Duff-Gordon*, 222 N.Y. 88, 90–91, 118 N.E. 214, "It is true that he does not promise in so many words that he will use reasonable efforts to place the defendant's indorsements and market her designs. We think, however, that such a promise is fairly to be implied. The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal. It takes a broader view today. A promise may be lacking, and yet the whole writing may be 'instinct with an obligation' imperfectly expressed. . . If that is so, there is a contract."

In discussing the termination provision which was section 10 of the contract (quoted *infra*), the Maryland court said: "The only reasonable interpretation of section 10 is that the contract continues in force until terminated for cause . . . or at least continues for a reasonable time. Construction of the contract as terminable at will would defeat its purpose and would make section 10 meaningless." In *Foster-Porter*, the court held that section 10 did not provide for an *exclusive* method of termination, whereas, in the present case, there is a specific provision (paragraph 8.b.) holding that the contract may be terminated *only* by (1) breach as stipulated in Section 8.f."—a situation not discussed or considered" by the majority opinion.

United States certified or registered mail, one copy addressed to Lessor at its principal office designated in the first paragraph of this agreement and the other copy addressed to Lessor at its service facility designated in Schedule 'A'."

A corresponding right to terminate by the lessor, conditioned that the lessor give 20 days notice of any breach to lessee and further conditioned that the lessee shall have 20 days within which to cure the breach, is specified in paragraph 8.f.3.a.

5. The Foster-Porter contract provided for default as follows: "If either party shall breach any obligation contained in this agreement, and such default shall continue for a period of ten days after written notice from the party not in default specifying the nature of the breach . . . the party not in default shall have the right to terminate this agreement by written notice to the other . . ." Foster-Porter gave an inadequate notice of cancellation stating that a breach had occurred, but without specifying the nature of the breach. The Court of Appeals of Maryland quoting from *Williston on Contracts* (Rev.Ed.) § 1027A and *Standard Motor Company v. Shockey*, 139 Md. 127, 114 A. 869, held that "a contract terminable not wholly at will, but only upon thirty days written notice, . . . is a contract for at least thirty days," and, citing Judge (later Justice) Cardozo in *Wood v.*

"The contractual language can only reasonably be interpreted to mean that the parties intended that REX could terminate the Agreement *only* if (1) there were a breach of the agreement by Hubler *and* (2) if, after having given the information required to be given under § 8.f.2.a., Hubler continued the conditions constituting the breach for at least 20 days, *and* (3) REX thereafter sent a written notice of termination in accordance with the Agreement. *See Canaras v. Lift Truck Services*, 272 Md. 337, 353–355 [322 A.2d 866, 877] (1974). In other words, it is not the breach itself that alone justifies the termination of the Agreement, but, under the terms of the Agreement, it is also the failure of Hubler to cure the breach after receipt of a notice setting forth contractually required information which, in conjunction with the breach, justifies termination. *See Northwest Water Corp. v. The City of Westminister, supra,* [164 Colo. 61, 432 P.2d 757, 1967]; *Mad River Lumber Sales, Inc. v. Willburn,* [205 Cal. App.2d 321], 22 Cal.Rptr. 918 (Cal.App. 1962); *Carleno Coal Sales v. Ramsey Coal Co., supra,* [129 Colo. 393], 270 P.2d 755 Colo. 1954; 17A CJS *Contracts* § 400, p. 487 and § 404, p. 492."

Although not involving a specific provision for advance notice in the event of a breach of the terms and conditions of the lease agreement, the case of *City of Baltimore v. Industrial Electronics, Inc.*, 230 Md. 224, 186 A.2d 469 (1962), appears to be substantially in point. The City leased with an option to buy, a total of 90 pieces of two-way radio communication equipment, with a required provision for maintenance of the equipment by Electronics. After having paid $43,724.21 to Electronics, the City cancelled the contract because of inadequate maintenance service by Electronics with a balance of $52,109.79 owing under the agreement. Under the contractual provisions the City had the right to "annul the contract or any part thereof" and to "thereupon have the power to contract for the completion of the work ... and to charge the entire cost and expense thereof to the contractor ... out of such monies as may

be due or may become due to the contractor." The trial court found and the appellate court affirmed, that the maintenance of the equipment by Electronics fell short of its obligation under the contract, but permitted a recovery by Electronics for the balance due under the contract, less the cost to the City of obtaining proper maintenance for the remaining life of the contract. On the issue as to whether a recovery could be permitted where Electronics had failed in its contractual obligation, Maryland's highest court had this to say:

We turn to consideration of the meaning of the contracts in a situation in which Electronics failed in a contractual obligation. The City argues that the contracts mean that any failure by Electronics to comply with any of their terms justifies cancellation no matter how harsh the consequences to Electronics. The rule to be applied is that an interpretation which makes a contract fair and reasonable will be preferred to one leading to a harsh or unreasonable result, so that a reading which produces a forfeiture will not be favored. Williston on Contracts (3rd Ed.), Sec. 620; *Carozza v. Williams*, 190 Md. 143, 150, 57 A.2d 782.

And in *Sorenson v. J. H. Lawrence Co.*, 197 Md. 331, 79 A.2d 382, 385 (1951), the Maryland court stated the general rule as to interpretation of contracts as follows: "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles. The court, in interpreting a contract, considers the language employed, the subject matter, and the surrounding circumstances, and places itself in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them and to judge of the meaning of the words and the correct application of the language to the things described." This is exactly what the district court did in the instant case, but this finding is now being reversed summarily because of "mutual fault." In the present case it is abundantly clear that a fair and

reasonable interpretation of the lease agreement between Hubler and REX did not contemplate a forfeiture [6] where substituted vehicles were provided and there was an express provision for a 20 day notice to Hubler to enable Hubler to correct the defect as to each piece of equipment. Assuredly, Hubler's position is even stronger than the situation involving Electronics and the City of Baltimore. In all events, the cited case furnishes abundant authority under Maryland law that, where "mutual fault" exists, there can still be a recovery by a party under the particular terms of a contract.

The majority refers to a quotation and comment from *Restatement of Contracts* § 274 (1932) in support of its position. Whatever may be the value of the cryptic statements contained in the excellent work of the American Law Institute, there are generally statements which lead to a contrary conclusion. For example, § 269 provides: "Where by the terms of promises for an agreed exchange a stated material performance by one party is due at an earlier time than a stated performance by the other party, the duty to render the later performance is constructively conditional on the earlier performance being rendered except as stated in § 268(2)." And in § 271, it is said: "Where by the terms of promises for an agreed exchange the order of time in which two performances by the parties are to take place is dependent on a future event, the occurrence of the event has the same legal operation in making promises conditional as if the time of its occurrence had been known when the contract was made and had been stated therein." While it is apparent that my confidence in quotations and comments from the Restatement of Contracts is not the best, I hasten to add that the foregoing quotations can arguably support Hubler's position, although I would obviously prefer reliance upon Maryland law which controls this case.

Also relied upon by the majority is *Westinghouse Elec. Corp. v. Garrett Corp.*, 601 F.2d 155 (4th Cir. 1979). This authority does hold, under Maryland law, that mutual fault may preclude a recovery by either party under certain circumstances dependent upon the contract provisions. The appellate court, in affirming the district court, pointed to the language of the termination clause which allowed the seller to escape the default termination provisions *only* if he was in fact not in default or if default is not due to his fault or negligence or beyond his control. I find no fault with this decision, but it is significant that the Hubler-REX contract contained no similar provision and, in fact, made the right to terminate conditioned upon a breach as contained in paragraph 8.f. which provides for the 20 day notice by REX and an opportunity afforded to Hubler to correct the defective equipment within that period of time. It should be noted that the termination clause makes no reference to paragraph 6.b. which requires Hubler to maintain and service the fleet of trucks.

It certainly does not appear to me that the district court failed to consider the application of the "mutual fault" rule to Hubler's claim. Simply stated, there was no "mutual fault" which operated to defeat a recovery by Hubler under the termination clause of the agreement.

The Appendix consists of 10 volumes with a total of 2652 pages. The district court's exhaustive opinion discusses every element in issue. If the "mutual fault" rule applies to this particular lease agreement with respect to required maintenance, such fault will forever preclude recovery by any lessor agreeing to maintain a fleet of vehicles as they are constantly in need of repair.

I respectfully dissent.

---

**6.** It may be argued that the judgment of the district court will result in unjust enrichment to Hubler. However, the contract specifically provided a formula for the determination of damages in the event of a wrongful termination of the lease agreement as drafted by REX, and the district court followed this formula in arriving at the amount of the judgment.