911 F.2d 724
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
QUALITY INNS INTERNATIONAL, INC., Quality Hotels and
Resorts, Inc., and Quality Inns, Inc., Plaintiffs-Appellants,
v.
L.B.H. ASSOCIATES LIMITED PARTNERSHIP, Defendant,
Federal Deposit Insurance Corporation, Appellee.
QUALITY INNS INTERNATIONAL, INC., Quality Hotels and
Resorts, Inc., and Quality Inns, Inc., Plaintiffs-Appellants.
v.
L.B.H. ASSOCIATES LIMITED PARTNERSHIP, Defendant-Appellee,
Federal Deposit Insurance Corporation, Defendant.
QUALITY INNS INTERNATIONAL, INC., Quality Hotels and
Resorts, Inc., and Quality Inns, Inc., Plaintiffs-Appellants,
v.
L.B.H. ASSOCIATES LIMITED PARTNERSHIP, Defendant-Appellee,
Federal Deposit Insurance Corporation, Defendant.
 Nos. 89-2443 to 89-2445.
 United States Court of Appeals, Fourth Circuit.
 Argued April 4, 1990.
Decided July 26, 1990.
 
 Appeals from the United States District Court for the District of Maryland, at Baltimore. Paul V. Niemeyer, District Judge. (CA-89-814-PN; CA-89-811; CA-89-643)
 David Foxwell Albright, Semmes, Bowen & Semmes, Baltimore, Md., (argued), for appellants; Richard M. Kremen, Katharine M. Ebersberger, Semmes, Bowen & Semmes, Baltimore, Md., on brief.
 Irving Edward Walker, Frank, Bernstein, Conaway & Goldman, Baltimore, Md., Paul M. Nussbaum, Whiteford, Taylor & Preston, Baltimore, Md., (argued), for appellees; Diana G. Motz, Kenneth Oestreicher, Frank, Bernstein, Conaway & Goldman, Baltimore, M., F. Gillis Green, Whiteford, Taylor & Preston, Baltimore, Md., on brief.
 D.Md.
 AFFIRMED.
 Before ERVIN, Chief Judge, SPROUSE, Circuit Judge, and REBECCA BEACH SMITH, United States District Judge for the Eastern District of Virginia, Sitting by Designation.
 PER CURIAM:
 
 
 1
 Appellants Quality Inns International, Quality Hotels and Resorts, and Quality Inns (hereinafter "Quality") appeal the district court's affirmance of the bankruptcy court's disposition of various matters arising in the course of appellee L.B.H. Associates Limited Partnership's bankruptcy proceedings under Chapter 11.
 
 
 2
 L.B.H.'s sole asset was the Lord Baltimore Hotel, operated under a Management Contract and Franchise Agreement with Quality. On September 28, 1987, L.B.H. filed a bankruptcy petition in the United States Bankruptcy Court for the District of Maryland. On the same day, L.B.H. moved to terminate the Management Contract and Franchise Agreement. The bankruptcy court approved the termination by order of February 22, 1988.
 
 
 3
 On May 25, 1988, L.B.H. filed its first reorganization plan, but it did not file an accompanying disclosure statement. Quality filed a proposed reorganization plan and disclosure statement on June 20, 1988. However, on July 7, 1988, the bankruptcy court granted L.B.H.'s motion to extend the time in which it had the exclusive right to file a plan, and the court struck Quality's plan in order to implement L.B.H.'s extension.
 
 
 4
 L.B.H. filed a Third Amended Plan of Reorganization on October 21, 1988, and the bankruptcy court confirmed the plan by order of December 9, 1988. Quality appealed to the United States District Court for the District of Maryland, and the district court affirmed by order dated June 21, 1989. This appeal followed.
 
 I.
 
 5
 On appeal, Quality raises the following issues: (1) whether L.B.H.'s disclosure statement satisfied the requirements of 11 U.S.C. Sec. 1125; (2) whether the bankruptcy court erred in extending L.B.H.'s exclusive filing period and in striking Quality's proposed plan and disclosure statement in order to implement the extension; (3) whether the bankruptcy court erred in failing to hear testimony concerning Saul Perlmutter's history as managing general partner of L.B.H. when L.B.H.'s plan proposed that Perlmutter remain with the hotel in a managerial capacity; (4) whether L.B.H.'s plan complied with the requirements of the bankruptcy code regarding the absolute priority rule and feasibility; (5) whether the bankruptcy court erred in overruling Quality's objection to the Federal Deposit Insurance Corporation's claim in the amount of $18,272,314.25; and (6) whether the bankruptcy court erred in approving L.B.H.'s termination of the Management Contract and Franchise Agreement. We address these issues in the order in which they are raised.
 
 II.
 A. Disclosure
 
 6
 Quality first asserts that L.B.H.'s disclosure statement did not satisfy 11 U.S.C. Sec. 1125(a)(1), which requires disclosure of:
 
 
 7
 information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan....
 
 
 8
 Quality contends that L.B.H.'s disclosure statement was inadequate because it did not disclose conflicts of interest and mismanagement by Saul Perlmutter, L.B.H.'s managing general partner, and did not disclose the new management's failure to meet growth projections.
 
 
 9
 After lengthy argument during which Quality raised each of these objections, the bankruptcy court approved L.B.H.'s disclosure statement. Joint App. at 565-71 (transcript of Aug. 30, 1988, hearing on objection to disclosure statement). Noting that these matters would be fully considered at the confirmation hearing, the court stated:
 
 
 10
 I don't think that the Debtor is obligated to put in all of the negative views about its organization that the opposing parties may have. Obviously, they hold those views. They're here to express them and they'll be here probably to express them at confirmation, but I don't think the Debtor is obligated to supply the dagger that will end the Debtor's life before the confirmation is even embarked upon.
 
 
 11
 Id. at 571. The district court affirmed the bankruptcy court's conclusion of adequate disclosure. Id. at 1071-74 (transcript of district court's oral opinion of June 15, 1989).*
 
 
 12
 The adequacy of a disclosure statement is determined on a case by case basis in light of the particular facts and circumstances. In re Scioto Valley Mortgage Co., 88 B.R. 168, 170 (Bankr.S.D.Ohio 1988). In this case, we find that the bankruptcy court did not err in its conclusion that adequate disclosure did not require the debtor to include all complaints raised by the debtor's opponents. Therefore, the district court was correct in affirming the bankruptcy court's conclusion in this regard.
 
 B. Exclusive Filing Period
 
 13
 Quality next asserts that the bankruptcy court erred in extending L.B.H.'s exclusive filing period and in striking Quality's plan and disclosure statement. Section 1121(b) of Title 11 provides that "only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter." However, Section 1121(d) states that "the court may for cause reduce or increase the 120-day period."
 
 
 14
 On January 25, 1988, L.B.H. moved to extend its exclusive filing period. The bankruptcy court granted the extension because L.B.H. had been involved in protracted litigation to dissolve the management and franchise relationships with Quality, the case was a complex one, L.B.H. had "been making every effort to rehabilitate itself," and there was "a promise of success." Joint App. at 438-39 (transcript of July 5, 1988, ruling on motion to extend exclusive filing period). By order of July 7, 1988, the bankruptcy court also granted L.B.H.'s motion to strike Quality's plan and disclosure statement in order to implement the extension of L.B.H.'s exclusive filing period. The district court affirmed. Id. at 1074-48 (transcript of district court's oral opinion of June 15, 1989).
 
 
 15
 The bankruptcy court did not abuse its discretion in extending L.B.H.'s exclusive filing period. Section 1121(b) expressly authorizes such an extension, and the factors considered by the bankruptcy court are both relevant and permissible. Moreover, to the extent that the considerations relied upon by the bankruptcy court are findings of fact, they are not clearly erroneous.
 
 
 16
 Nor did the bankruptcy court abuse its discretion in striking Quality's plan, as that was the only means by which to implement the extension of L.B.H.'s exclusive filing period. In addition, because Section 1125(a)(1) provides that adequate disclosure need not include information about any other plan, the striking of Quality's plan did not render L.B.H.'s disclosure inadequate.
 
 C. Perlmutter Testimony
 
 17
 Quality also maintains that the bankruptcy court erred in failing to hear testimony concerning Saul Perlmutter's alleged self-dealing as managing general partner of L.B.H., when L.B.H.'s plan proposed that Perlmutter remain with the hotel in a managerial capacity. When a principal of the debtor is to continue managing the debtor after confirmation, evidence of the principal's past performance is relevant to the confirmation decision. In re Gulph Woods Corp., 84 B.R. 961, 974 (Bankr.E.D.Pa.1988). To that end, the bankruptcy court heard testimony concerning Perlmutter's alleged conflicts of interest, and Quality cross-examined him at some length on these points. Joint App. at 715-23 (transcript of Nov. 1, 1988, testimony of Saul Perlmutter).
 
 
 18
 However, we do not find that the bankruptcy court abused its discretion in limiting some aspects of this testimony. As the bankruptcy court noted during the confirmation hearing:
 
 
 19
 I don't want Mr. Perlmutter to be the central issue in this case. I think the question is whether this plan that is before me will work out. To some extent the question will certainly devolve around whether the management that is in there is going to be successful, but I don't want this to degenerate into the kind of situation where we place one individual on trial and then he has got to come back and say he is a good person. That isn't the issue.
 
 
 20
 Supp.App. at 2 (transcript of Oct. 24, 1988, confirmation hearing). The bankruptcy court did not abuse its discretion in seeking to avoid undue emphasis on personalities at the expense of the relevant issues in the case.
 
 D. Absolute Priority Rule and Feasibility
 
 21
 Quality next contends that L.B.H.'s plan did not comply with the requirements of the bankruptcy code regarding the absolute priority rule and feasibility. The absolute priority rule provides that a plan is fair and equitable with respect to a class of unsecured claims if "the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property." 11 U.S.C. Sec. 1129(b)(2)(B)(ii) (emphasis added).
 
 
 22
 Under L.B.H.'s plan, Class 10 consists of Quality's unsecured claims. These claims are to be satisfied over time. Because no interest is to be paid, Quality asserts that the claims will not be paid in full. Class 14, junior to Class 10, consists of L.B.H.'s general partnership interests. The plan provides that Class 14 claimants may retain their interests by receiving five partnership units in exchange for reduction of their Class 7 claims by $262,500.00, contribution of cash in the amount of $262,500.00, or any combination of cash and reduction of Class 7 claims in the amount of $52,500.00 for each unit retained. Joint App. at 599 (Debtor's Third Amended Plan of Reorganization).
 
 
 23
 Quality maintains that the Class 14 claimants retain their junior interests on account of the Class 10 claims not being paid in full, in violation of the absolute priority rule. We disagree. The Class 14 claimants receive five partnership units in exchange for a contribution of capital in the amount of $262,500.00, not on account of the Class 10 claims failing to be satisfied in full. Because the Class 14 claimants must make a current contribution of "money or money's worth" to retain their interests, see Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 121-22 (1939), and because these contributions are necessary to the success of the undertaking, see Joint App. at 874-78 (projected cash flow statements), the plan does not violate the absolute priority rule.
 
 
 24
 Section 1129(a)(11) of Title 11 provides that a plan shall be confirmed only if confirmation is not likely to be followed by liquidation of the debtor or the need for further financial reorganization. The standard for feasibility is whether there is a "reasonable assurance of success. Success need not be guaranteed." Kane v. Johns-Manville Corp., 843 F.2d 636, 649 (2d Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 176 (1988).
 
 
 25
 Feasibility is a factual determination subject to the clearly erroneous standard on appeal. See, e.g., In re Acequia, Inc., 787 F.2d 1352, 1358 (9th Cir.1986); United Properties, Inc. v. Emporium Department Stores, Inc., 379 F.2d 55, 63-64 (8th Cir.1967). After a confirmation hearing running from October 24, 1988, to December 5, 1988, and involving numerous witnesses, eight of whom were experts, the bankruptcy court found that confirmation of L.B.H.'s plan was not likely to be followed by liquidation or the need for further reorganization, a finding affirmed by the district court. Joint App. at 1090-91 (transcript of district court's oral opinion of June 15, 1989). In light of the extensive confirmation hearing and the bankruptcy court's opportunity to evaluate the demeanor and credibility of the witnesses, we do not find its determination of feasibility to be clearly erroneous.
 
 E. FDIC Claim
 
 26
 Quality next objects to the bankruptcy court's allowance of the Federal Deposit Insurance Corporation's claim. The FDIC filed a proof of claim in the amount of $16,690,287.10 on February 3, 1988. Id. at 117. After lengthy negotiations, the FDIC agreed to forgo substantial payments at the outset of the plan in exchange for payment of its claim in the sum of $18,272,314.25, and participation in L.B.H.'s litigation recoveries. Id. at 345-46, 613, 622, 626-28.
 
 
 27
 Quality objected to the FDIC's claim on November 2, 1988, and on November 21, 1988. Despite the objection, the bankruptcy court confirmed the plan on December 9, 1988. The court heard argument on the objection on January 24, 1989, and overruled the objection by order of the same date. The district court affirmed. Id. at 1081-85 (transcript of district court's oral opinion of June 15, 1989).
 
 
 28
 Quality first contends that confirmation of the plan was improper because the bankruptcy court had not yet ruled on Quality's objection. We disagree. Although the bankruptcy court did not actually rule on Quality's objection until January 24, 1989, the court addressed and rejected the objection in reaching its confirmation decision. Id. at 849-50 (transcript of Dec. 5, 1988, confirmation hearing). Therefore, even if the bankruptcy court erred in confirming the plan prior to a formal ruling on Quality's objection, the error was harmless.
 
 
 29
 Quality also asserts that the FDIC failed to present evidence supporting its $18,272,314.25 claim. The bankruptcy court found that "[t]he amount is consistent with the evidence which was presented at the hearing on confirmation. It is consonant with the papers which are on file." Id. at 916 (transcript of Jan. 24, 1989, evidentiary hearing). Because Quality has failed to specify in what respects the larger sum is inconsistent with the evidence, and our review of the record indicates that the bankruptcy court's factual finding is not clearly erroneous, we affirm the judgment below in this regard.
 
 
 30
 Quality's last argument regarding the FDIC's claim is that the bankruptcy court erred in not subordinating the claim due to the FDIC's conduct. The doctrine of equitable subordination is codified at 11 U.S.C. Sec. 510(c). Subordination is appropriate when the claimant has engaged in inequitable conduct, the conduct has injured creditors or given the claimant unfair advantage, and subordination is not inconsistent with the bankruptcy code. See, e.g., Benjamin v. Diamond, 563 F.2d 692, 700 (5th Cir.1977).
 
 
 31
 With respect to the FDIC's claim, the bankruptcy court stated:
 
 
 32
 [I]f ever there was an instance where the doctrine is inapplicable, it would be in this particular case. I can't see how there can be any subordination of the claim of FDIC when based on what I have seen throughout this proceeding it has operated absolutely magnificently, in good faith, with clean hands in negotiations which were conducted at arms length with the debtor and during which time in many cases as I indicated earlier to my surprise the FDIC has dealt away its advantage to the benefit of the debtor.
 
 
 33
 Joint App. at 916 (transcript of Jan. 24, 1989, evidentiary hearing). Because the bankruptcy court correctly applied the law and its findings of fact are not clearly erroneous, we find no error in the failure to subordinate the FDIC's claim.
 
 F. Termination
 
 34
 Quality's final arguments concern the bankruptcy court's approval of L.B.H.'s termination of the Management Contract and Franchise Agreement. Article VII of the Management Contract provided:
 
 
 35
 [I]f at any time during the Operating Term, after the exhaustion of the $768,000.00 of initial working capital, Owner has funded deficits in working capital and/or paid debt service on Permitted Financing from the Working Capital and Debt Service Reserve Account, hereinafter defined, in the total amount of at least $1,900,000.00, then Owner may terminate this Agreement by giving Operator thirty (30) days prior written notice of termination; provided, however, that Operator, at its option, exercisable by written notice to Owner within said thirty (30) day period, may avoid such termination of this Agreement by contributing, in cash, to the Working Capital Reserve Account an amount equal to the working capital furnished to the Operator from the said Working Capital Reserve Account during the period of twenty-four (24) months immediately preceding the Owner's notice of termination.
 
 
 36
 Id. at 60. An addendum to the Franchise Agreement provided that "if the Management Agreement is terminated by Owner for cause or pursuant to the second paragraph of Article VII, then Franchisee shall have the option of terminating the Franchise Agreement concurrent with the termination of the Management Agreement." Id. at 100.
 
 
 37
 Quality first asserts that the bankruptcy court erred in approving termination because L.B.H. did not meet the funding requirements of Article VII. In its Order Approving Termination of Debtor's Management Contract with Quality Hotels and Resorts, Inc. and Franchise Agreement with Quality Inns International, Inc., dated February 22, 1988, the bankruptcy court found that:
 
 
 38
 Prior to September 29, 1987, when LBH gave Quality Hotels notice of termination of the Management Contract, LBH had provided $768,000 for initial working capital and $3,802,359 for additional working capital and debt service, all of which was exhausted.... The Management Contract expressly permitted LBH to fund the hotel's working capital requirements and pay debt service from more than one bank account, and from sources other than bank accounts. That all of the funds were not transferred to the Hotel through specific bank accounts is immaterial.
 
 
 39
 The district court affirmed these findings. Joint App. at 1092-93 (transcript of district court's oral opinion of June 15, 1989).
 
 
 40
 The bankruptcy court's factual determination that L.B.H. contributed $3,802,359.00 toward working capital and debt service in addition to $768,000.00 in initial working capital is not clearly erroneous. See, e.g., id. at 239-40 (owner funding of initial working capital of $768,000.00), 243-56 (transcript of Oct. 14, 1987, hearing on preliminary and permanent injunction). Therefore, the district court properly affirmed this finding. In light of this finding that L.B.H. provided the requisite level of funding, we do not address whether the bankruptcy court erred in its legal conclusion that the funds need not have passed through a specific account, because any error in this regard is harmless.
 
 
 41
 Quality also argues that termination was improper because L.B.H. did not comply with the funding schedule established in Article XIII of the Management Contract. See id. at 65. However, Article VII allowed L.B.H. to terminate the contract if it had contributed $1,900,000.00 toward working capital and debt service at "any time during the Operating Term." Id. at 60 (emphasis added). Therefore, compliance with the funding schedule was not a condition precedent to L.B.H.'s right to terminate.
 
 
 42
 Alternatively, Quality insists that L.B.H. was required to prove its own performance, including compliance with the funding schedule, as a condition precedent to termination. Such is generally the rule. See Hubler Rentals, Inc. v. Roadway Express, Inc., 637 F.2d 257 (4th Cir.1981). However, Hubler makes clear that nonperformance bars recovery only when a contractual duty is a condition precedent to recovery and the nonperformance would constitute a material breach. See id. at 260-61. As discussed above, compliance with the funding schedule was not such a condition precedent. Moreover, in the case at bar, an implied requirement that L.B.H. comply with the funding schedule would contradict the express terms of Article VII, which provided for termination after contribution of $1,900,000.00 in working capital or debt service at "any time during the Operating Term." Joint App. at 60 (emphasis added). Finally, nothing in the record indicates that Quality considered L.B.H. to be in breach until L.B.H. sought to terminate the contract, nearly two years after any failure to comply with the funding schedule.
 
 
 43
 Quality next asserts that L.B.H.'s letters dated September 29, 1987, purported to terminate the Management Contract and Franchise Agreement immediately, in violation of the requirement that L.B.H. give Quality thirty (30) days' notice. We agree that the letters attempted immediate termination of these arrangements. However, any error in this regard was harmless. The purpose of the notice requirement was to allow Quality to avoid termination by contributing additional funding. See id. In its order approving termination of the Management Contract and Franchise Agreement, dated February 22, 1988, the bankruptcy court found that Quality "failed to tender to LBH any cash to avoid termination prior to the expiration of the 30-day period." Id. at 340. This finding was affirmed by the district court. Id. at 1094 (transcript of district court's oral opinion of June 15, 1989). This finding is not clearly erroneous, and because Quality did not seek to exercise its right to avoid termination, any error regarding the notice requirement was harmless.
 
 
 44
 Lastly, Quality asserts that termination of the Management Contract and Franchise Agreement was not in L.B.H.'s sound business judgment. Under the business judgment rule, courts defer to corporate officers' decisions on matters entrusted to their business judgment absent a showing of bad faith or gross abuse of that judgment, and this rule extends to bankruptcy proceedings. See Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1046-48 (4th Cir.1985) (applying business judgment rule to debtor's rejection of executory contract pursuant to 11 U.S.C. Sec. 365). Whether a debtor's decision is so manifestly unreasonable that it could only be based on bad faith, whim, or caprice rather than sound business judgment is a question of fact, and this factual determination is subject to the clearly erroneous standard. Id. at 1047.
 
 
 45
 In its order of February 22, 1988, the bankruptcy court found that L.B.H.'s decision to terminate these arrangements "was not manifestly unreasonable or based on bad faith, whim or caprice.... Termination of the Management Contract and Franchise Agreement was in the best interest of the debtor and the estate." Joint App. at 341. The district court affirmed the bankruptcy court's findings. Id. at 1094-95 (transcript of district court's oral opinion of June 15, 1989). Because these findings are not clearly erroneous, we affirm the judgment with respect to termination of the Management Contract and Franchise Agreement.
 
 III.
 
 46
 The district court properly affirmed the bankruptcy court's disposition of these matters. For the foregoing reasons, the judgment of the district court is
 
 
 47
 AFFIRMED.
 
 
 
 *
 The district court also found that Quality was not harmed by any inadequacy because it knew the facts and was not induced to vote for or against the plan on the basis of the disclosure statement. Joint App. at 1071. In addition, the district court noted that it was "probably" correct that Quality lacked standing to raise the inadequacy of the disclosure statement on behalf of other creditors. Id.; see In re Middle Plantation, 47 B.R. 884, 891 (E.D.Va.1984) ("Holders of impaired claims who have been induced to vote in favor of a plan are the only ones who may raise the issue of the adequacy of the Disclosure Statement."), aff'd, 755 F.2d 928 (4th Cir.1985). In light of our holding that the district court did not err in affirming the bankruptcy court's conclusion of adequate disclosure, we do not reach these issues